<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| EDERJUNIO COELHO GOMES, | : : : | Civil Action No. 16-4326 (ES) |
| Petitioner, | : : |  |
| v. | : : | OPINION |
| CHARLES L. GREEN, | : : |  |
| Respondent. | : : |  |

**SALAS, DISTRICT JUDGE**

Petitioner Ederjunio Coelho Gomes ("Petitioner") is currently being detained by the Department of Homeland Security, Immigration and Customs Enforcement ("DHS/ICE") at the Essex County Correctional Facility in Newark, New Jersey. On July 15, 2016 Petitioner filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his detention pending removal. (D.E. No. 1, Petition ("Pet")). For the reasons stated below, the Court will GRANT the Petition.[1]

**I. BACKGROUND**

Petitioner is a native and citizen of Brazil who entered the United States in 2001. (Pet. at 1, 5). On July 3, 2014, Petitioner pled guilty to Manufacturing, Distribution, Dispensing, or Possession with Intent to Manufacture Gamma Hydroxybutyrate, in violation of N.J. Stat. Ann. § 2C:35-5.2a, and of Distribution, Dispensing, or Possessing with Intent to Distribute a Controlled Dangerous Substance on or within 1,000 feet of school property, in violation of N.J. Stat. Ann. §

---

[1] Petitioner later filed an amended petition that remained the same in substance, but changed the respondent because Petitioner had been transferred. (D.E. No. 4).

2C:35-7. (D.E. No. 5, Respondent's Answer ("Ans.") at 3). Petitioner was ordered to pay fines and fees totaling $2,330, and sentenced to Special Probation Drug Court, through which he was required to complete a drug treatment program, submit to random urine monitoring, and remain drug-, alcohol-, and arrest-free. (*Id.*).

On January 29, 2016, ICE arrested Petitioner, detained him pursuant to 8 U.S.C. § 1226(c), and served him with a Form I-286 Notice of Custody Determination and Notice to Appear ("NTA"). (*Id.*). The NTA alleged that Petitioner's conviction renders him removable under two grounds: (1) 8 U.S.C. § 1182(a)(2)(A)(i)(II), as an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of (or conspiracy or attempt to violate) any law or regulation relating to a controlled substance a defined in 21 U.S.C. § 802; and (2) 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled. (*Id.* at 4).

On March 8, 2016, Petitioner appeared, with counsel, before the Immigration Judge ("IJ") for a first master calendar hearing. (*Id.*) At that time, he admitted the factual allegations against him, denied his removability under the controlled-substance charge, and conceded his removability as an alien present in the United States without having been admitted or paroled. (*Id.*). The IJ continued the proceedings to give Petitioner's counsel an opportunity prepare his case. (*Id.*).

On April 12, 2016, Petitioner appeared before the IJ and requested another continuance. (*Id.* at 5). The IJ reset the proceedings for May 12, 2016, and directed Petitioner to file any applications for relief at that time. (*Id.*). On that date, Petitioner appeared before the IJ and requested another continuance so that he could apply for relief. (*Id.*). The IJ continued the proceedings until June 21, 2016, and then again until July 8th so Petitioner could file his application. (*Id.*). On July 8, 2016, Petitioner appeared before the IJ and submitted a Form I-

2

598 Application for Asylum and for Withholding of Removal.  (*Id.*).  The IJ set a date of September 15, 2016, for a hearing on the merits of Petitioner's claims.  (*Id.* at 6).  On July 15, 2016, Petitioner filed the instant petition.  (D.E. No. 1).

Pursuant to an Order from this Court, Respondent filed an Answer on September 6, 2016. (D.E. No. 5) and Petitioner filed a Reply on September 26, 2016 (D.E. No. 6).  Because neither submission addressed what occurred at the September 15 hearing before the Immigration Court, other than to state that it had been rescheduled for November 30, this Court entered an Order requiring a supplemental answer from Respondent.  (D.E. No. 8).  According to the Supplemental Answer, and as conceded by Petitioner, the hearing was rescheduled at Petitioner's counsel's request because he mistakenly believed that Petitioner's merits hearing was scheduled for October 15, 2016 and he wished to submit a sixty-five page report on country conditions for the Immigration Court's consideration, but he was not prepared to proceed with the merits hearing that day.  (D.E. No. 9, Respondent's Supplemental Answer ("Supp. Ans.") at 2).

## II. DISCUSSION

### A. Legal Standard

#### 1. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas relief "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is alleged to be "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

This Court has subject matter jurisdiction over this Petition under § 2241 because Petitioner was detained within its jurisdiction, by a custodian within its jurisdiction, at the time he filed his Petition, *see Spencer v. Lemna*, 523 U.S. 1, 7 (1998) and *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494–95, 500 (1973), and because Petitioner asserts that his detention is not statutorily authorized, *see Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011).

**2. Authority for Detention**

Federal law sets forth the authority of the Attorney General to detain aliens in removal proceedings, both before and after issuance of a final order of removal.

Title 8 U.S.C. § 1226 governs the pre-removal-order detention of an alien. Section 1226(a) authorizes the Attorney General to arrest, and to detain or release, an alien, pending a decision on whether the alien is to be removed from the United States, except as provided in subsection (c). Section 1226(a) provides, in relevant part:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General-
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on-
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole; . . .

8 U.S.C. § 1226(a).

4

Certain criminal aliens, however, are subject to mandatory detention pending the outcome of removal proceedings, pursuant to 8 U.S.C. § 1226(c)(1), which provides in relevant part:

The Attorney General shall take into custody any alien who—

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in Section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1).

In *Diop v. ICE/Homeland Sec.*, the Third Circuit held that "§ 1226(c) contains an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length. . . . Should the length of [an alien's] detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof." 656 F.3d at 235. The Third Circuit accordingly ruled that Diop's pre-removal detention period of thirty-five months was unreasonable in length. *See id.*; *see also Leslie v. Attorney Gen. of United States*, 678 F.3d 265, 271 (3d Cir. 2012) (holding that a four-year detention is unreasonably long).

The Third Circuit held that reviewing courts "must exercise their independent judgment as to what is reasonable." *Diop*, 656 F.3d at 234. The Court of Appeals adopted a "fact-dependent inquiry" in *Diop*, "requiring an assessment of all of the circumstances of any given case." *Id.*

5

The facts of *Diop* showed that Diop had faced extensive delays in his removal proceedings due to errors by the Immigration Judge and the Government in failing to ensure the evidence needed. *See id.* Likewise, in *Leslie*, the Third Circuit found petitioner had endured a four year detention, which had been delayed by the immigration court, and "ultimately remanded for further proceedings, due entirely to clerical errors made by the immigration judge." *Leslie*, 678 F.3d at 271. The Third Circuit noted that: "'Although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.'" *Id.* (quoting *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)).

In *Chavez-Alvarez v. Warden York Cnty. Prison*, the Third Circuit further clarified the guidance given in *Diop*. 783 F.3d 469, 474-78 (3d Cir. 2015). Specifically, the court stated that:

> [A]t a certain point—which may differ case by case—the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous. At this tipping point, the Government can no longer defend the detention against claims that it is arbitrary or capricious by presuming flight and dangerousness: more is needed to justify the detention as necessary to achieve the goals of the statute.
>
> …
>
> The primary point of reference for justifying the alien's confinement must be whether the civil detention is necessary to achieve the statute's goals: ensuring participation in the removal process, and protecting the community from the danger that he or she poses. Therefore, it is possible that a detention may be unreasonable even though the Government has handled the removal case in a reasonable way.

*Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 474-78 (3d Cir. 2015). The court concluded that "beginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time Chavez–Alvarez had been detained for one year, the burdens to Chavez–Alvarez's liberties outweighed any justification for using presumptions to detain him without bond

6

to further the goals of the statute." *Id.*

## B. Analysis

Here, Respondent acknowledges the Third Circuit's holdings in *Diop* and *Chavez-Alvarez*, but nevertheless argues that Petitioner's situation is distinguishable for two reasons: (1) much of the delay in Petitioner's proceedings to date is attributable to the Petitioner's requests for continuances; and (2) Petitioner's claim for relief from removal is substantially weaker than that of Chavez-Alvarez.

Several courts in this district have addressed these exact arguments by the Government:

> Turning first to the issue of Petitioner's responsibility for some of the delay in his case, the Third Circuit specifically held in *Chavez-Alvarez* that the reasonableness of a given period of detention does not rely solely on how the Government has conducted itself, and observed that the "primary point of reference for justifying [an] alien's confinement must be whether the civil detention is necessary to achieve the statute's goals: ensuring participation in the removal process and protecting the community from the danger [the alien] poses." 783 F.3d at 475. Thus, detention can become unreasonable, and a petitioner can be entitled to a bond hearing, even where the Government itself acted reasonably and is not responsible for the delays in the conclusion of an alien's immigration proceedings. *Id.* While the Third Circuit did observe that "certain cases might be distinguishable [from *Chavez-Alvarez* where the alien is] merely gaming the system to delay their removal," and that the aliens in such cases "should not be rewarded a bond hearing they would not otherwise get under the statute," *Id.* at 476, the *Chavez-Alvarez* panel also observed that courts need not "decide whether an alien's delay tactics should preclude a bond hearing" where the court could not conclude that the alien acted in bad faith. *Id.*
>
> Determining whether an alien has acted in bad faith is not a matter of "counting wins and losses," but is instead a fact specific inquiry requiring consideration of whether the alien has presented "real issues" to the immigration court by raising factual disputes, challenging poor legal reasoning, raising contested legal theories, or presenting new legal issues. *Id.* "Where questions are legitimately raised, the wisdom of [the Third Circuit's] ruling in *Leslie* [*v. Att'y Gen. of the United States*, 678 F.3d 265, 271 (3d Cir. 2012),] is

7

> plainly relevant [and the court] cannot 'effectively punish' these aliens for choosing to exercise their legal right to challenge the Government's case against them by rendering 'the corresponding increase in time of detention ... reasonable.'" *Id.* Thus, the conduct of the parties in a vacuum does not per se determine reasonableness, and the Court must weigh all available relevant information in determining whether the reasonableness "tipping point" has been reached. *Id.*

*Fleurant v. Green*, No. 16-4482, 2016 WL 7424121, at *2–3 (D.N.J. Dec. 23, 2016); *see also Madera v. Green*, No. 16-5055, 2016 WL 7424487 (D.N.J. Dec. 23, 2016); *Mejia v. Green*, No. 16-4664, 2016 WL 7424122 (D.N.J. Dec. 21, 2016); *Singh v. Rodriguez*, No. 16-4603, 2016 WL 7217612 (D.N.J. Dec. 13, 2016); *Rodriguez v. Green*, No. 16-4431, 2016 WL 7175597 (D.N.J. Dec. 7, 2016); *Cerda-Torres v. Green*, No. 16-4194, 2016 WL 7106023 (D.N.J. Dec. 6, 2016).

The procedural history of Petitioner's proceeding is similar to the factual circumstances in those cases. Specifically, although there have been several delays in his immigration case pursuant to requests by Petitioner's counsel, there have been no allegations of bad faith on his part. *See Chavez-Alvarez*, 783 F.3d at 476. Rather, it appears that each request was sought in order to allow Petitioner time to file various forms of relief from removal. As stated by the Third Circuit, detention can become unreasonable, and a petitioner can be entitled to a bond hearing, even where the Government itself acted reasonably and is not responsible for the delays in the conclusion of an alien's immigration proceedings. *Id.* at 475. Moreover, although Respondent argues that Petitioner's claims for relief from removal are "substantially weaker" than those of Chavez-Alvarez and Petitioner has not shown a "likelihood" of relief from removal, it also acknowledges that Petitioner has submitted an application for withholding of removal based on threats made against him in his home country of Brazil. (Answer at 19). Respondent does not believe such

8

allegations are sufficient, but implicit in its argument is the concession, however remote, that there is a possibility for relief. (*Id.* at 19-20).

Taking the circumstances as a whole, the Court finds that after over eleven months of detention, the tipping point has been reached and Petitioner's continued detention absent a bond hearing is no longer necessary to achieve the goals of the statute. This Court therefore concludes that Petitioner's petition must be granted, and he should be provided a bond hearing before an immigration judge. *See Chavez-Alvarez*, 783 F.3d at 477-78.[2]

**III. CONCLUSION**

For the foregoing reasons, the Court holds that Petitioner's continued mandatory detention, pursuant to 8 U.S.C. § 1226(c), is no longer reasonable under the circumstances of this case. Accordingly, the Court grants the Writ of Habeas Corpus and directs that an immigration judge provide Petitioner with an individualized bond hearing to determine with an "whether detention is still necessary to fulfill the statute's [§ 1226(c)] purposes," *Leslie*, 678 F.3d at 270–71 (internal quotation marks omitted), within 10 days of the date of the entry of the Order accompanying this Opinion.

<u>s/ Esther Salas</u><br>
**Esther Salas, U.S.D.J.**

---

[2] Respondent has requested that if the Petition is granted, then the Court should require Petitioner to seek a custody determination by the deportation officer prior to receiving a bond hearing from an immigration judge. (Ans. at 21). However, pursuant to the holdings in *Diop* and *Chavez-Alvarez*, the Court will order the immigration judge to hold a bond hearing. *See Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 235 (3d Cir. 2011) ("Should the length of his detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof."); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015) ("We will . . . remand with instruction to enter an order granting the writ of habeas corpus and ensure that Chavez–Alvarez is afforded, within ten days of the entry of this order, a hearing to determine whether, on evidence particular to Chavez–Alvarez, it is necessary to continue to detain him to achieve the goals of the statute.").